**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANADIAN NATIONAL RAILWAY COMPANY, | No. C11-4589 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| PHOENIX LOGISTICS, INC., | **(Docket No. 9)** |
| Defendant. | |
| _____/ | |

### I.    <u>INTRODUCTION</u>

Plaintiff Canadian National Railway Company ("Canadian"), a Canadian corporation, filed suit against Phoenix Logistics, Inc. ("Phoenix"), alleging violations of an Agreement for Payment of Accounts Receivable between the parties.  In its complaint, Plaintiff sought to recover delinquent payments owed under the Agreement in the amount of $161,569.95.  Compl. ¶ 6.  On November 8, 2011, Plaintiff properly served summons and complaint upon Defendant. *See* Docket No. 4.  When Defendant failed to plead or otherwise defend or appear in this action, Plaintiff requested entry of default against Defendant on December 20, 2011.  Docket No. 5.  On December 22, 2011, the clerk entered the default against Defendant.  Docket No. 8.  Pending before the Court is Plaintiff's Motion for Default Judgment.  Docket No. 9.  For the reasons set forth below, the Court **GRANTS** the motion for default judgment but modifies the damages awarded to $151,834.14.

### II.    <u>FACTUAL & PROCEDURAL BACKGROUND</u>

In the complaint, Plaintiff alleges as follows.  Plaintiff is a Canadian Corporation that is a common carrier by railroad and does business in the United States and Canada.  Compl. ¶¶ 2-3.

**United States District Court**
For the Northern District of California

1  Phoenix is a California corporation engaged in freight transportation. *Id.* ¶ 4.  On June 17, 2009, the

2  parties entered into an Agreement for Payment of Accounts Receivable ("Agreement"), under which

3  Phoenix was to make monthly payments to Canadian to settle arrears of $218,839.48 plus interest.

4  *Id.* ¶ 5 & Ex. A.  The parties had previously entered into a credit agreement on August 23, 2005,

5  under which Canadian extended a line of credit to Phoenix, which Canadian cancelled.  *Id.* Ex. A.

6  Pursuant to the Agreement, Phoenix was to make monthly payments of $7,000 plus 1% interest from

7  June-December 2009, and monthly payments of $15,000 plus 1% interest from January-December

8  2010, at which point the payments would cease.  *Id.* ¶ 5 & Ex. A.  Phoenix appears to have made

9  some payments under the Agreement, but at some point it ceased making payments despite

10  Canadian's demands.  *Id.* ¶¶ 6-7 & Ex. A, Schedule 1.  Plaintiff alleges that the outstanding amount

11  due is $161,569.95.  *Id.* ¶ 6.

12       On September 15, 2011, Plaintiff brought suit against Phoenix for the amount owed under

13  the Agreement.  Docket No. 1.  On November 8, 2011, Plaintiff's process server personally served

14  summons, complaint, and other documents upon Fred S. Saul at Phoenix's corporate headquarters.

15  *See* Docket No. 4.  When Defendant failed to plead or otherwise defend or appear in this action,

16  Plaintiff requested entry of default against Defendant on December 20, 2011.  Docket No. 5.  On

17  December 22, 2011, the clerk entered the default against Defendant.  Docket No. 8.  Pending before

18  the Court is Plaintiff's Motion for Default Judgment.  Docket No. 9.

### III.   DISCUSSION

20  A.   Adequacy of Service of Process

21       In deciding whether to grant or deny a default judgment, a court must first "assess the

22  adequacy of the service of process on the party against whom default is requested."  *Board of*

23  *Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS

24  19065, at *2 (N.D. Cal. Jan. 2, 2001).  According to Federal Rule of Civil Procedure 4(h)(1), a

25  corporation may be served "in the manner prescribed for individuals by subdivision (e)(1)," Fed. R.

26  Civ. P. 4(h)(1), and Rule 4(e)(1) in turn allows for service "pursuant to the law of the state in which

27  the district court is located."  Fed. R. Civ. P. 4(e)(1).

28

**United States District Court**
For the Northern District of California

1    Under California law, a summons and complaint may be served on a corporation by

2  delivering a copy of the documents (1) to the person designated as agent for service under certain

3  provisions of the California Corporations Code or (2) to the "president or other head of the

4  corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a

5  general manager, or a person authorized by the corporation to receive service of process."  Cal. Code

6  Civ. P. § 416.10(a), (b).

7    In the instant case, Plaintiff filed a proof of service indicating that the summons and

8  complaint had been served on November 8, 2011.  *See* Docket No. 4.  The Proof of Service indicates

9  that Plaintiff personally served Fred S. Saul, the registered agent of the Defendant entity, pursuant to

10  Code Civ. P. § 416.10.  *See* Docket No. 1-1 (summons listing Fred Saul as registered agent of

11  Phoenix).  The Court could take judicial notice of the fact that the Secretary of State's website lists

12  Mr. Saul as the registered agent for service of process and the address for service at 6850 Regional

13  Street #240 in Dublin, which matches the address on the proof of service.  *Compare* Docket No. 4,

14  *with* Business Search, http://kepler.sos.ca.gov/cbs.aspx (enter Phoenix Logistics into the business

15  search to produce the correct address) (last visited April 3, 2012).  Accordingly, service of the

16  summons and complaint was proper.

17  B.    <u>Legal Standard</u>

18    After entry of default, the Court may grant a default judgment on the merits of the case.  *See*

19  Fed. R. Civ. P. 55.  The "decision whether to enter a default judgment is a discretionary one" as a

20  defendant's default alone does not entitle a plaintiff to a court-ordered judgment.  *Aldabe v. Aldabe*,

21  616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising that discretion, the Court considers the following

22  factors:

23      (1) the possibility of prejudice to the plaintiff; (2) the merits of
      plaintiff's substantive claim; (3) the sufficiency of the complaint; (4)

24      the sum of money at stake in the action; (5) the possibility of a dispute
      concerning material facts; (6) whether the default was due to

25      excusable neglect; and, (7) the strong policy underlying the
      Federal Rules of Civil Procedure favoring decisions on the merits.

26

27  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, upon entry of default, a

28  court must take as true all factual allegations in the complaint except those related to the amount of

1  damages.  *See Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002); *Geddes v. United*

2  *Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

3  However, "necessary facts not contained in the pleadings, and claims which are legally insufficient,

4  are not established by default."  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

5  C.     Merits of Motion for Default Judgment

6         Although Plaintiff does not address the *Eitel* factors in its motion for default judgment, it

7  does provide sufficient documentation for the Court to conclude that the above factors weigh in

8  favor of default judgment.  For example, if the motion for default judgment were to be denied, then

9  Plaintiff would likely be left without a remedy.  *See Walters v. Shaw/Guehnemann Corp.*, No. C

10  03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny

11  plaintiffs' motion [for default judgment] would leave them without a remedy.  Prejudice is also

12  likely in light of the merits of their claim."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,

13  1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will

14  likely be without other recourse for recovery.").  The remedy sought by Plaintiff is limited to the

15  damages that would be reasonably expected to put Plaintiff in the same position had Defendant

16  fulfilled its contractual obligations, *i.e.*, payment of amounts owing under the Agreement.

17  Therefore, the sum of money at stake is reasonably proportionate to the harm caused to Plaintiff by

18  Defendant's breach.  *See Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2559 JSW (MEJ),

19  2006 WL 2527776, at *5 (N.D. Cal., Aug. 30, 2006) ("Given the nature of Defendant's conduct in

20  failing to pay the amounts owed, such resulting damages are reasonable and would naturally be

21  expected to flow from Defendants' breach of contract.").  In addition, because Defendant has not

22  filed an answer to the complaint, there is little to suggest that there is a possibility of a dispute

23  concerning material facts, and it is unlikely that Defendant's default was due to excusable neglect,

24  especially when Plaintiff served not only the summons and complaint but also the request for entry

25  of default and motion for default judgment on Defendant but still received no response.  *See* Docket

26  No. 4 (proof of service of summons and complaint); Docket No. 13 (proof of service of motion for

27  default judgment).  Indeed, Plaintiff's counsel filed a letter to the Court on March 12, 2012,

28  representing that he had spoken with John Saul, Esq., brother of Fred Saul (the registered agent for

United States District Court

For the Northern District of California

1  Phoenix), who advised counsel that Phoenix has been out of business and that it does not intend to

2  take any action in response to the Motion for Default Judgment.

3         The only factors that deserve closer analysis are the second and third factors.  These factors

4  weigh the substantive merit of the plaintiff's claims and the sufficiency of the pleadings to support

5  these claims.  In order for these factors to weigh in favor of entering default judgment, the plaintiffs

6  must state a claim upon which they may recover.  *Pepsico*, 238 F. Supp. 2d at 1175. If the court

7  determines Plaintiff would have likely succeeded on the merits of its substantive claim had

8  Defendant not defaulted, then default judgment would be appropriate.  *Aldabe v. Adabe*, 616 F.2d

9  1089, 1089 (9th Cir. 1980).

10         Under California law,[1] a party bringing a breach of contract claim must demonstrate the

11  following elements: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by

12  the defendant; and (4) damages.  *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th

13  731, 745 (2001) (citing 4 Witkin, Cal. Procedure (Pleading) § 476 (4th ed. 1997)); *Shanghai*

14  *Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1004 (N.D. Cal. 2001).  Here,

15  Plaintiff properly alleges all the facts necessary to establish the elements of their claim.  First,

16  Defendant is a party to the Agreement and expressly agreed to be bound by its terms.  Compl. ¶ 5 &

17  Ex. A.  Second, Plaintiff has performed under the contract by extending the time in which Defendant

18  could pay the amounts owed pursuant to a specific payment plan, and by surrendering certain rights

19  and privileges so long as Defendant did not default.  *Id.* Ex. A.  Third, under the Agreement,

20  Defendant agreed to make monthly payments to pay off its accrued debt through December 2010.

21  *Id.*  Based on Plaintiff's complaint, Defendant failed to contribute according to the terms of the

22  agreement.  Compl. ¶ 6 & Ex. A, Schedule 1.  Fourth, accepting all factual allegations as true, the

23  complaint establishes that Defendant violated the terms of the agreement and caused Plaintiff

24  damages in the form of lost payments.  Therefore, Plaintiff has adequately demonstrated a

25  substantial likelihood of success on merits of its claim.

26

27  ──────────────────

28         [1]  The Agreement provides that California law governs its interpretation.  Compl. Ex. A, ¶ 7.

United States District Court

For the Northern District of California

D.      Damages

Because default judgment is warranted, the Court must determine what damages are appropriate.  In its motion for default judgment, Plaintiff asks for $161,569.95, the amount they allege is still outstanding under the Agreement's payment schedule.  Anderson Decl., Docket No. 9-1, ¶ 4.  Plaintiff has the burden of "proving up" its damages.  *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.,* No. 04-02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit.").

Based on the evidence submitted to the Court, Plaintiff has met its burden of proof regarding the majority of its claimed damages.  Although Carol Anderson, the Development Officer for Revenue Management, declares that $161,569.95 is outstanding, Anderson Decl. ¶ 4, the evidence submitted in support of such a claim is confusing and inconclusive.  However, Plaintiff provides a January 2010 email from Fred Saul, the agent for Defendant, in which Defendant admits it owes $151,834.14 as of January 26, 2010.  *Id.* Ex. D.  The letter states that Defendant had just made a $10,000 payment a week prior, bringing its balance to $151,834.14.  While Plaintiff disputes that Defendant actually made such a payment, *see* Anderson Supp. Decl. ¶¶ 7-8, it cannot prove such on the basis of the documents provided given Defendant's direct statement to the contrary.

As Defendant has admitted to owing $151,834.14, the Court concludes that Plaintiff has met its burden of proof as to this amount only.  *See Webb v. Indigenous Global Dev. Corp.*, C-04-3174 MJJ, 2005 WL 1200203, at *5 (N.D. Cal. May 16, 2005) (finding evidence sufficient where plaintiff "provided the Court with a copy of the promissory note signed by IGDC which specifically states that IGDC must 'repay the principal sum of $250,000 to [Mr. Webb] on or before May 11, 2004,'" along with "a copy of the audit letter sent to him by IGDC, which acknowledges the $250,000 debt").  Indeed, Plaintiff conceded at oral argument that it could not provide any additional proof or explanation of sums beyond that which Defendant admitted to owing.  Accordingly, the Court **GRANTS** default judgment in Plaintiff's favor with damages in the amount of $151,834.14.

///

///

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for default judgment and awards damages in the amount of $151,834.14.  The Clerk shall close the file.

This Order disposes of Docket No. 9.


IT IS SO ORDERED.


Dated:  April 19, 2012


_____
EDWARD M. CHEN
United States District Judge